UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | No. 6:11-CR-54-GFVT-REW |
| ) | No. 6:14-CV-7365-GFVT-REW |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| GARRY D. HUNTER, ) | |
| ) | |
| Defendant/Movant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Movant, Garry D. Hunter, is a federal inmate. DE #510 (Motion), at 1. On August 16, 2014,[1] Hunter filed a *pro se*[2] motion, accompanied by three affidavits and other exhibits, under 28 U.S.C. § 2255. *See generally id.* The United States responded in opposition on October 7, 2014. DE #515 (Response). Although the Court gave Hunter time to reply, DE #511, he did not. Per normal practice, the District assigned the matter to the undersigned for a recommended disposition. The Court **RECOMMENDS** that the District Judge fully **DENY** § 2255 relief and issue **NO** Certificate of Appealability.

**I.    BACKGROUND INFORMATION**

On September 2, 2011, a grand jury indicted Hunter on one count of conspiring to knowingly and intentionally distribute oxycodone, a Schedule II controlled substance, in

---

[1] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (*per curiam*). Here, Hunter affirmed under penalty of perjury that he executed and mailed the motion, per prison mail, on August 16, 2014. DE #510, at 22.

[2] *Pro se* petitions receive a comparatively lenient construction by the Court. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a *pro se* habeas petition, though vague and conclusory, are entitled to a liberal construction" including "active interpretation" toward encompassing "any allegation stating federal relief" (citations and internal quotation marks omitted)).

1

violation of 21 U.S.C. § 846. DE #1 (Indictment). Hunter pleaded guilty on June 20, 2012. DE #338 (Minute Entry for Rearraignment before Judge Ingram). Judge Van Tatenhove sentenced Hunter on September 20, 2012. DE #432 (Minute Entry for Sentencing). Movant received a 183-month prison term followed by three years of supervised release, as well as a fine. DE ##455 (Judgment); 463 (Amended Judgment). Hunter timely filed a *pro se* notice of appeal, DE #458 (*Pro Se* Notice of Appeal); the Sixth Circuit affirmed. DE #508 (Sixth Circuit Order); *United States v. Hunter*, 540 F. App'x 498 (6th Cir. 2013).

On August 16, 2014, Hunter timely submitted his § 2255 motion to vacate. DE #510. The Government responded. DE #515. The motion stands ripe for review. The Court wholly rejects Movant's ineffective assistance of counsel claims, all of which conclusively fail on the record.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001))). A defendant alleging a constitutional violation must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on

2

the proceedings" in order to obtain § 2255 relief. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1721-22 (1993)). When alleging a non-constitutional error, a defendant must prove the error constituted a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 82 S. Ct. 468, 471 (1968)); *see also Watson*, 165 F.3d at 488. In making a § 2255 motion, a movant generally bears the burden of proving factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (*per curiam*) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

## III. ANALYSIS

In his § 2255 motion, Hunter requests relief based on four allegations of ineffective assistance of counsel. Because Hunter fails to make the required showings on any of the stated grounds, he is not entitled to relief under 28 U.S.C. § 2255.

### A. *Ineffective Assistance of Counsel*

When asserting an ineffective assistance claim, a movant must prove both deficient performance and prejudice. *Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984); *Campbell v. Bradshaw*, 674 F.3d 578, 586 (6th Cir. 2012); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

3

*Strickland*, 104 S. Ct. at 2064. A movant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 2064-65. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 2064. In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 2069. In the context of a guilty plea, a movant must show that a "reasonable probability exists that, but for counsel's errors, defendant would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 106 S. Ct. 366, 370 (1985).

        1.       Failing to Object to the Plea Agreement at Sentencing

First, Hunter argues that counsel was ineffective when he did not object to the plea agreement at sentencing.[3] DE #510, at 13-14. Hunter argues that counsel "was aware that Hunter had previously rejected the first plea regarding an alleged organizer or leadership role, and conduct involving a gun, and that Hunter was adamant about going to

---

[3] Hunter retained Hon. Brent L. Caldwell as counsel. *See, e.g.*, DE #490 (Rearraignment Transcript), at 21. At rearraignment, Hunter advised that he was "satisfied with the advice, counsel and representation" that Mr. Caldwell provided. *Id.* at 22. Hunter "believe[d] Mr. Caldwell ha[d] assisted [him] effectively in defending th[e] charge[.]" *Id.* He had no "complaint whatsoever about Mr. Caldwell's performance." *Id.* at 22-23.

4

trial as the information was false[.]" *Id.* at 14.[4] After the Court determined to apply the gun and leadership enhancements, Hunter argues, counsel was ineffective for not objecting to the Court's acceptance of the plea agreement.

The three sentencing enhancements at issue involve firearms, a threat, and a leadership role.[5] The plea agreement, DE #433 (signed by Hunter), states, "There is no agreement between the parties concerning the application of any enhancements based on specific offense characteristics or any additional Chapter 3 adjustments. The parties reserve the right to argue their respective positions concerning any such matters at sentencing." *Id.* at 3. The plea agreement thus does not mandate (or recommend) application of the enhancements, but it explicitly left open the possibility of their application. Instead, the presentence report, prepared by the USPO, included the enhancements. *See* DE #462 (Sealed PSR), at 8-9. Mr. Caldwell objected to each. *E.g.*, DE #480, at 5-6. After conducting a hearing as part of sentencing where the United States put on witnesses, whom Mr. Caldwell cross-examined, the Court ultimately determined the gun and leadership enhancements applied, over Mr. Caldwell's objections. *Id.* at 54-60, 79; *see also* DE #462, at 15-16 (Sealed Addendum to the PSR stating Defendant's objections); *id.* at 19-20 (Email from Caldwell to USPO Mills stating Defendant's objections). The Court did not apply the threat enhancement. DE #480, at 60.

On appeal, the Sixth Circuit found that the District Court "properly applied" the gun enhancement. *Hunter*, 540 F. App'x at 499. The Court of Appeals declined to address Hunter's additional ineffective assistance arguments as to background

---

[4] Hunter's argument regarding failure to call witnesses regarding the alleged threat, DE #510, at 14, is moot because the Court did not apply that enhancement. DE #480 (Sentencing Transcript), at 60.

[5] *See* USSG §§ 2D1.1(b)(1) (gun enhancement), 2D1.1(b)(2) (threat enhancement), 3B1.1(a) (leadership enhancement).

5

information or comparison to co-Defendant Sparks, but it found that "Hunter has not demonstrated prejudice resulting from counsel's other alleged errors[,]" which included (1) the alleged concession that the gun enhancement applied, (2) an alleged failure to argue Hunter did not possess firearms during the conspiracy, and (3) alleged treatment of the guidelines as mandatory. *Id.* at 500.

At rearraignment, Judge Ingram had exhaustively reviewed the sentencing process. He explained the guideline range calculation process and emphasized that the range is not binding on the District Judge. DE #490, at 26-28, 41-44. Hunter acknowledged that a guideline range was indeterminate (even unknowable) until the District Court ruled on objections to the presentence report. *Id.* at 42-43. Hunter conceded that if he disagreed with the guideline range Judge Van Tatenhove ultimately adopted, "that would not give [him] the right to withdraw [his] guilty plea." *Id.* at 43; *accord id.* at 28, 44.

At sentencing, Hunter confirmed that he was "satisfied with the advice and counsel and the representation [he] received" from Mr. Caldwell. DE #480, at 4. Judge Van Tatenhove noted Mr. Caldwell's "careful consideration" of the PSR. *Id.* Mr. Caldwell thoroughly discussed the objections and advocated for Hunter. *Id.* at 5-6, 7, 51-52, 68-74. TFO Keith Berry and FBI Special Agent Christopher Hubbuch testified. DE #436 (Witness List). TFO Berry primarily described the conduct justifying the leadership enhancement, and Agent Hubbuch's testimony principally concerned the gun enhancement. DE #480, at 12-40.

On the leadership enhancement, Judge Van Tatenhove noted that "a conspiracy can have more than one leader" and that "the fact that perhaps Bobby Sparks had a

6

leadership role and maybe been more involved, that's not necessarily dispositive of whether [Hunter] should also get an enhancement[.]" *Id.* at 6-7. The conduct supporting Hunter's leadership enhancement, the transcript and record suggest, was his role as financier of much of the conspiracy's operations—chiefly pill trips to Florida and connected activities. TFO Berry testified that codefendants stated that Hunter was a trip leader/financier, which other records (such as medical payment records) corroborated. *Id.* at 16-17. Hunter also distributed his share of pills to Sparks to sell, which TFO Berry testified was consistent with leadership behavior. *Id.* at 29-30. Hunter took a higher portion of pills (indicative of his role). He also had a vehicle with permanent modifications to facilitate the conspiracy and his hierarchical place. *See id.* at 18-21.

On the gun enhancement, the PSR and Agent Hubbuch's testimony established that officers seized multiple firearms from Hunter's home, including a shotgun loaded with buckshot beside his front door, a loaded revolver under the chair where Hunter was sitting, a loaded .22 caliber pistol under Hunter's bed pillow, a loaded .357 magnum on his nightstand, and a .9 millimeter pistol in the dresser next to his bed (with a full .9 millimeter magazine in a kitchen drawer). DE ##462, at 16; 480, at 33-37 (Agent Hubbuch testifying regarding the items found in the search of Hunter's residence). Agent Hubbuch also described the home's general fortification, not easily visible from the outside (*e.g.*, "fortified with plywood and angle steel bolted to the walls to the window frame"). DE #480, at 33-34. The search yielded over $120,000 in cash (kept in a hidden safe) that Hunter forfeited in the case. *See* DE #487.

The United States thus presented robust proof regarding the leadership and gun enhancements at sentencing. In light of the testimony and evidence and the risk of a

7

harsher sentence if Hunter testified (and the Court determined that he was not credible), Mr. Caldwell indicated that the United States agreed to request to withdraw the threat enhancement, and "with that" the defense would agree that the other two enhancements apply. *Id.* at 43-45, 46-47. Judge Van Tatenhove reminded the parties that the Court "still ha[s] to independently decide whether that enhancement's appropriate under the facts[.]" *Id.* at 47.

Mr. Caldwell made his position clear: "I think the record is complete on [the leadership and gun enhancements,] and I'm not conceding they apply, but I believe there's sufficient evidence there, if the Court so rules." *Id.* at 51. Mr. Caldwell ably represented his client while maintaining credibility before and candor with the Court. By no means did Mr. Caldwell's statement concede his client's argument. Instead, Mr. Caldwell continued to protest the enhancements' applicability. Ultimately, as Judge Van Tatenhove stated, it is the Court's independent duty—separate from the parties' argument or stipulation—to determine if the enhancements apply.

On the leadership enhancement, Judge Van Tatenhove found that Hunter played a "significant role as an organizer of this conspiracy that involved multiple individuals traveling out of the state returning the pills." *Id.* at 55. He found by at least a preponderance "that Mr. Hunter was funding these trips, organizing these trips, recruiting individuals, or certainly affirming individuals who expressed an interest in participating[.]" *Id.* at 55-56. The Court described "sophisticated mechanisms put in place to hide the significant proceeds from this illegal drug activity, as well as the drugs themselves[.]" *Id.* at 56. The Court found by "a preponderance of the evidence that there was an exercise of management responsibility over the property involved here, the assets

8

and the activities of this particular criminal organization." *Id.* Hunter's argument was that codefendant Bobby Sparks was, in fact, the leader. The record suggests otherwise—that Hunter was *a* leader of the conspiracy, all that the enhancement requires.[6]

On the gun enhancement, Judge Van Tatenhove found "no question these weapons were found in the defendant's home. The weapons were possessed during the commission of the crime[.]" *Id.* at 58. The Court recognized that individuals may possess guns for many lawful reasons, but "the number of firearms, the fact that several were loaded, the fortification of the home, suggests . . . that this enhancement's appropriate." *Id.* The Court overruled the objections to the leadership and gun enhancements. *Id.* at 59. Again, the Sixth Circuit affirmed that the Court properly applied the gun enhancement. *Hunter*, 540 F. App'x at 499.[7]

However, based on the United States's concession and ambiguities in the record, Judge Van Tatenhove sustained the objection on the threat enhancement. DE #480, at 59-60. He then approved the plea agreement. *Id.* at 61. Moving to sentence calculation, Mr. Caldwell advocated, in an extended colloquy, for a sentence at the low end of the guidelines. *Id.* at 68-74. Hunter allocuted. *Id.* at 78. Judge Van Tatenhove confirmed that

---

[6] *See, e.g.*, *United States v. Green*, 202 F.3d 869, 871 (6th Cir. 2000) (discussing leadership enhancement standards); *United States v. Huff*, No. 3:10-CR-73, 2012 WL 1565442, at *10 (E.D. Tenn. May 2, 2012) ("[T]here can be more than one leader or organizer."); *see also United States v. Ugochukwu*, 538 F. App'x 674, 682 (6th Cir. 2013) ("[T]he evidence fully supported the district court's determination that the defendant was *an* organizer or leader[.]" (emphasis added)).

[7] Regarding the timing of Hunter's firearm possession, "[a]lthough the search of Hunter's residence occurred several months after the conclusion of the drug conspiracy, the government's evidence was sufficient to satisfy its burden of showing that Hunter possessed a firearm during the commission of the conspiracy or other relevant conduct." *Hunter*, 540 F. App'x at 499 (citing *United States v. Faison*, 339 F.3d 518, 519-21 (6th Cir. 2003), and *United States v. Dugalic*, 489 F. App'x 10, 23-24 (6th Cir. 2012)).

Hunter understood the proceedings and gave him a final opportunity to ask questions, but he did not. *Id.* at 93-94.

Viewing the scenario as a whole, Mr. Caldwell delivered competent performance to Hunter. Counsel argued against the enhancements and in favor of a lower sentence. The plea agreement is simply distinct from enhancement applicability. Hunter knew that he could not know if the enhancements would apply until sentencing, when the Court would resolve objections to the presentence report. Hunter was aware that the guideline range was indeterminate until after resolution of his objections. DE #490, at 41-44. Hunter knew he did not condition his plea on the enhancements' inapplicability, and he knew that he could not withdraw his guilty plea based on the ultimate guideline range. *Id.* at 43-44. He pleaded guilty regardless.[8] Further, he did not seek to withdraw his plea after Judge Van Tatenhove determined the enhancements applied, instead affirmatively allocuting, engaging in further interactions with the Court, and declining to ask any final questions at sentencing conclusion. Not objecting to the plea agreement, in these circumstances, was not ineffective. The plea agreement operated as intended. It preserved the status quo and in no way prejudiced Hunter as to the enhancements. The sentencing process unfolded, Hunter's lawyer advocated zealously, and the Court reached a proper result. There is no *Strickland* deficiency with respect to the plea agreement.

        2.        Failing to Investigate and Confront Witnesses Regarding Conduct Used for Enhancements

Second, Hunter argues that counsel was ineffective for "failing to investigate and confront witnesses regarding alleged conduct used for enhancements[.]" DE #510, at 15-

---

[8] A defendant's statements in a plea colloquy carry a strong presumption of veracity, which Hunter makes no effort to overcome. *Blackledge v. Allison*, 97 S. Ct. 1621, 1629 (1977).

16. Regarding the leadership and gun enhancements, Hunter argues that counsel should have subpoenaed "certain witnesses and co-defendants, particularly Bobby Sparks[.]" *Id.* at 15. Again, any argument regarding the threat enhancement—and this is Hunter's focus—is moot because the Court did not apply that enhancement.

Hunter is critical of counsel, but he offers no evidence or other specifics of who Mr. Caldwell should have subpoenaed (other than Sparks) or what additional evidence he should have presented. Hunter presents the affidavits of Debra Adkins and Melina Hunter. In her affidavit, Adkins states that in November 2011 (after execution of the search warrant at Hunter's residence), she went to Hunter's residence and "observed a gun in the gun safe." DE #510-2 (Adkins Affidavit). Similarly, Melina Hunter, Movant's ex-wife, testified that in "all the years" she knew Movant, "he has always owned guns which he used for sporting activities" and that all the guns "were old family guns[.]" DE #510-3 (Melina Hunter Affidavit).

Adkins's and Melina Hunter's statements hardly change the gun enhancement analysis or Agent Hubbuch's clear testimony regarding the multiple loaded firearms throughout the residence and the home's general fortification. Hunter's generalized speculation as to Sparks's testimony (notwithstanding any possible privilege issues), as well as his conjecture about the statements of other unidentified witnesses, cannot be the basis for an ineffective assistance claim. *See, e.g.*, *Malcum v. Burt*, 276 F. Supp. 2d 664, 679 (E.D. Mich. 2003) ("To present an ineffective assistance of counsel claim based on a failure to call a witness, a defendant must make an affirmative showing as to what the missing evidence would have been and prove that the witness' testimony would have produced a different result."); *Dell v. Straub*, 194 F. Supp. 2d 629, 650 (E.D. Mich. 2002)

11

("[V]ague and speculative allegations" concerning witnesses do not entitle Petitioner to habeas relief.). Counsel's decisions about which witnesses to call—including a decision not to call a co-defendant—are entitled to a strong presumption of reasonableness. *Strickland*, 104 S. Ct. at 2065. Live testimony is often unpredictable and could have, especially given the United States's opportunity to cross, ultimately negatively impacted Hunter's case. Hunter presents no affirmative proof that any particular witness or piece of evidence would have changed the outcome of his sentencing. Counsel is not ineffective for wrestling with unpredictability and making reasonable decisions concerning witnesses. The lack of positive proof by Hunter demonstrates the futility of the criticism. Even the affidavits tendered do not touch the core of the gun enhancement issue—possession at the relevant time. Hunter here justifies no criticism of counsel.

### 3. Failing to Object to the Two Level Gun Enhancement

Third, Hunter argues that counsel was ineffective because he did not object to—and against Movant's instructions conceded the applicability of—the gun enhancement. DE #510, at 17-18. The argument centers on two bench conference statements.

First, counsel planned to call Hunter to testify about the threat but alerted the Court to Hunter's "severe . . . panic attacks and nervousness[.]" DE #480, at 41-42. Mr. Caldwell told Judge Van Tatenhove that the Court had "clear enough evidence on those first two enhancements[.]" *Id.* This, in context, by no means admitted that the enhancements applied, but rather indicated that Defendant would not be addressing those topics testimonially, in light of Hunter's apparent medical conditions or mindset.

At a second bench conference, Mr. Caldwell indicated that if the United States moved to withdraw the threat enhancement, Defendant was "agreeable that the other two

enhancements apply." DE #480, at 46. Judge Van Tatenhove reminded the parties, "That doesn't settle it necessarily. . . . I still have to independently decide whether that enhancement's appropriate under the facts I have." *Id.* at 47. Mr. Caldwell later confirmed that he did not concede the leadership and gun enhancements apply. *Id.* at 51. After announcing the sentence, Judge Van Tatenhove stated that Mr. Caldwell "stated [his] objections quite well on the record." *Id.* at 92.

The evidence indicates that, even if Hunter did possess old family guns used recreationally, officers seized numerous firearms from his fortified home, including a loaded shotgun, revolver, .22 caliber pistol, .357 magnum, and an unloaded .9 millimeter pistol (with corresponding ammo located nearby). These firearms were located in unusual (and seemingly strategic) places around the home. Again, the Sixth Circuit has already found that "Hunter has not demonstrated prejudice resulting from counsel's" alleged failure "to argue that the firearms were not possessed during the conspiracy[.]" *Hunter*, 540 F. App'x at 500. The Sixth Circuit expressly found sufficient the government's evidence on possession during the conspiracy. *Id.*

Mr. Caldwell advocated against the enhancement's applicability in written objections to the PSR and orally at sentencing. Counsel consistently objected to the gun enhancement, and the bench conference statement—a (Court-rejected) hypothetical responsive to the proof presented at the hearing and an attempt to maintain candor with the Court—did not constitute unconstitutionally deficient performance. Phrased as it was ("with that," meaning only on the condition that the United States move to withdraw the threat enhancement, a mandatory condition the Court rejected), the statement was not a concession of Hunter's position. Indeed, after the bench conference, Mr. Caldwell

13

reiterated his opposition to the enhancement. The Sixth Circuit explicitly affirmed on appeal that the Court "properly applied" the gun enhancement. That Court likewise found no *Strickland* prejudice regarding Hunter's argument that counsel "conceded the applicability of the [gun] enhancement[.]" *Hunter*, 540 F. App'x at 499-500.

The District Court independently decided the enhancement's applicability, and Hunter makes no showing that counsel's bench conference statement(s) tipped the balance in favor of applying it. The United States presented strong proof, and Judge Van Tatenhove thoroughly explained why the enhancement applied without mentioning Mr. Caldwell's alleged concession as a factor. DE #480, at 57-59. Counsel was not ineffective by these actions. He did all he reasonably could with the record presented (advocacy that removed the threat enhancement as part of the process).

Again, Hunter builds his arguments on the time-gap between conspiracy end (April 2011) and raid (September 2011). In September, Hunter continued to reside in a fortified home chock full of strategically placed weapons and containing $120,000 in cash (forfeited later as proceeds). The linkage between gun possession and the temporally proximate conspiracy is virtually unassailable under the § 2D1.1 rubric. Counsel objected in writing, advocated against the enhancement, and forced the United States to lay a proper enhancement foundation. Hunter's criticisms are baseless, fall well below *Strickland*'s threshold, and obviously (given the Sixth Circuit's treatment) undershoot any prejudice mark.

    4.    Failing to Offer Mitigating Evidence

Fourth, Hunter argues that counsel was ineffective when he failed to file a sentencing memorandum, call certain witnesses, and/or make certain arguments. DE

#510, at 19-21. In a failure to mitigate claim, the Court focuses "on whether the investigation supporting counsel's decision not to introduce mitigating evidence . . . *was itself reasonable*." *Wiggins v. Smith*, 123 S. Ct. 2527, 2536 (2003) (emphasis in original). "Reasonableness of the attorney's investigation is an objective determination of whether the investigation was reasonable given the prevailing professional norms, and the context of the investigation as seen from counsel's perspective at the time." *United States v. Tompkins*, No. 10-CR-20582, 2013 WL 5728794, at *4 (E.D. Mich. Oct. 22, 2013) (citing *Wiggins*, 123 S. Ct. at 2536).

In some rare factual situations, "[a] failure to investigate, participate in, and prepare for the sentencing proceedings fails to satisfy an objective standard of reasonable representation and therefore falls below Sixth Amendment standards for effective assistance of counsel." *Arredondo v. United States*, 178 F.3d 778, 788 (6th Cir. 1999) (Counsel made no effort to ensure the District Court had a factual basis for sentence, failed to correct clear errors in the PSR, and did not object to the PSR's drug-quantity estimate.). Here, the record shows that Mr. Caldwell—Hunter's chosen counsel—fought for Hunter at, and prior to, sentencing. Mr. Caldwell filed written objections to the presentence report and orally advocated for Hunter's positions at sentencing. Failure to file a sentencing memorandum alone is not automatically ineffective assistance. *E.g.*, *United States v. Mack*, 219 F. App'x 456, 462-64 (6th Cir. 2007); *Villa-Rodriguez v. United States*, No. 2:12-CV-261, 2013 WL 3122159, at *9 (S.D. Ohio June 19, 2013); *Samuel v. McKee*, No. 1:06-CV-187, 2009 WL 884615, at *9 (W.D. Mich. Mar. 27, 2009). Mr. Caldwell made the Court aware of mitigating factors through his objections and statements, and he advocated for a sentence at the low end of the guideline range. He

specifically pointed to Hunter's lack of criminal history and low probability of recidivism, given his background and his anticipated release age. Mr. Caldwell also drew the Court's attention to Hunter's ex-wife, who counsel characterized as "a saint" who "stood beside [Hunter] amazingly," and who "has supported him and will continue to." DE #480, at 73. The mitigative aspects Hunter now touts (record, family, constructive traits) all appeared in the PSR.

Judge Van Tatenhove was aware of and remarked upon Hunter's mitigating characteristics, including his generally law-abiding history, years of good family life, and prior business ownership (where he worked, "employed people," and "wanted to be a contributor to the community"). DE #480, at 6, 83, 85-86. Mr. Caldwell advocated for a sentence on the low end of the guideline range, while grappling with the reality that the range for this offense and this defendant was 168-210 months. There is not a reasonable probability that Adkins's and Melina Hunter's affidavit testimony would have changed the outcome. Beside the affidavits, Hunter only alleges either general categories of information in which counsel should have gathered more details or specific factors without a reasonable probability to change the sentence.[9] Movant attempts to cherry-pick

---

[9] Hunter's offered sourceless statistic shows that a *minority* of defendants with no criminal history received below-guidelines sentences. This would not likely alter his individualized sentencing outcome. Neither would the allegation that Hunter had a concealed carry certificate. Judge Van Tatenhove assumed Hunter had some lawful gun history. Hunter bemoans counsel not offering "additional information regarding [his] significant drinking problem[,]" "details surrounding [his] severe anxiety and panic disorder[,]" explanation of his home's fortification, evidence regarding the safe, "any available mitigating information or insight on why [he] may have decided to get involved in the drug business for the first time," and "similarities and differences between [his] and Bobby Sparks'[s] cases[.]" DE #510, at 19-20. Hunter offers no specific proof that would reasonably alter the sentencing outcome; while he, in hindsight, wishes Mr. Caldwell had offered more (mostly unspecified) information on various topics, Hunter does not meet his burden to show that the investigation and presentation Mr. Caldwell *did* make was unconstitutionally unreasonable in the context of the Court's sentencing

16

more details and general information categories that he, in hindsight, wishes counsel had mentioned. Counsel is not ineffective for not presenting every desired mitigating factor. Mr. Caldwell made reasonable efforts at investigation and presentation of relevant mitigating evidence.

Counsel alerted Judge Van Tatenhove to various helpful aspects of the PSR, and he argued substantially all of the § 3553 factors. Hunter's general and uncorroborated assertions do not demonstrate poor performance by counsel and do not, in any way, call into question the resulting sentence. Hunter's argument merits no relief.

### B. Motion to Appoint Counsel

At the end of his memorandum, Hunter requests the Court appoint counsel "to assist with further development of the claims raised herein." DE #510, at 21.[10] The appointment of counsel in § 2255 proceedings is firmly a matter in the Court's discretion. "In all proceedings brought under [§ 2255], and any subsequent proceedings on review, the court may appoint counsel." 28 U.S.C. § 2255(g). Further, when "the court determines that the interests of justice so require, representation may be provided for any financially eligible person who is seeking relief under section . . . 2255." 18 U.S.C. § 3006A(a)(2)(B); *see also United States v. Baker*, 586 F. App'x 458, 460 (10th Cir. 2014) (collecting cases and noting that a court may decline to appoint counsel "when the issues raised are not unusually complex either legally or factually, and when the merits do not appear colorable").

---

considerations. Again, the PSR and/or sentencing itself meaningfully encompassed most of these topics.

[10] The Court does not address Hunter's pending motion to appoint counsel "for the purpose of representing [him] due to the recent change in the United States Sentencing Guidelines[,]" DE #516 (Motion), a matter distinct from the § 2255 motion.

Hunter seeks appointment of counsel generally to investigate his ineffective assistance of counsel claims. Hunter provides no details of "further development" he seeks. The presented ineffective assistance claims, as discussed above, are not unusually complex and are unfounded in law and fact. Pursuant to the Court's recommendation that Hunter's § 2255 motion be denied altogether, the Court also declines to appoint counsel in these circumstances. The case, which is facially developed and analytically clear, does not merit such an appointment.

### C.   Evidentiary Hearing

At the end of his memorandum, Hunter additionally requests an evidentiary hearing. DE #510, at 21. The Court must hold an evidentiary hearing unless "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Further, no hearing is necessary "where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)) (internal quotation marks removed). Hunter's affidavits, which implicate no issue of analytical merit, create no relevant factual question requiring a hearing. *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999). Similarly, none of Hunter's claims warrants a hearing; the § 2255 motion filings and record of the case conclusively show, for the reasons stated above, that Hunter is not entitled to relief.

## III.   CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard

requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S. Ct. at 1604. Movant has not made a "substantial showing" as to any claimed denial of rights; his *Strickland* claims conclusively fail. Reasonable jurists would not find the Court's determination on the merits debatable. Accordingly, the Court recommends that the District Court entirely deny a Certificate of Appealability.

## IV.     RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the District Judge wholly **DENY** § 2255 relief (DE #510) and issue **NO** Certificate of Appealability.

\* \* \* \* \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen days after being served with a copy of this

decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 106 S. Ct. 466, 475 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

    This the 27th day of May, 2015.

Signed By:
Robert E. Wier  *REW*
United States Magistrate Judge